**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **DENNIS MELANCON, INC., ET AL.** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 12-1337** |
| | * | **REF:** ALL CASES |
| | * | |
| **CITY OF NEW ORLEANS** | * | **SECTION "L"(1)** |

## ORDER & REASONS

Before the Court are three Motions to Dismiss filed by Defendant the City of New Orleans ("the City"). (Rec. Docs. 7, 17, 27). The Court, having reviewed the submitted memoranda and the applicable law, and having heard oral argument on the motions, now issues this Order and Reasons. For the following reasons, Defendant's Motions to Dismiss are granted.

## I.  BACKGROUND OF LITIGATION

Originally, this case consisted of three separate lawsuits–*Dennis Melancon, Inc. et al. v. City of New Orleans*, *Monroe Coleman, et al. v. City of New Orleans*, and *Cedric Richard, et al. v. City of New Orleans*–consolidated under the name *Dennis Melancon, Inc. et al. v. City of New Orleans*. In each of these cases the Plaintiffs, all owners or possessors of Certificates of Public Necessity and Convenience ("CPNCs"), take issue with regulations passed by the New Orleans City Council on April 19, 2012. Those regulations are as follows: section 162-58 bans the use of law enforcement vehicles, vehicles previously used as taxis in other jurisdictions, and "salvaged," "reconditioned," or "rebuilt" vehicles, as taxicabs;[1] section 162-59 declares that driver's permits and Certificates of Public Necessity and Convenience ("CPNCs") "are privileges and not rights";[2] section 162-609 requires all taxicabs to maintain two years of trip sheets and

---

[1] Orleans Parish, La., Code of Ordinances § 162-58.
[2] Orleans Parish, La., Code of Ordinances § 162-59.

1

other company records;[3] section 162-657 requires taxicabs to have a taximeter with Passenger Information Monitor (PIM) device, which generates detailed printed receipts, and prohibits the use of handwritten receipts;[4] section 162-659 requires all taxicabs to have credit/debit card acceptance machines;[5] section 162-660 requires all taxicabs to be equipped with security systems;[6] section 162-661 requires all taxicabs to be fitted with global positioning systems (GPS);[7] and section 162-613 places an age limit of eleven model years on vehicles used as taxicabs beginning August 1, 2012, and seven model years beginning January 1, 2014.[8]

In addition, Plaintiffs take issue with two sections that existed prior to April 19, 2012, but were amended by the New Orleans City Council on that date. First, section 162-321, the ordinance regarding prerequisites for transfer of CPNCs, was amended to make transfers discretionary and to prohibit the transfer of a CPNC when a suspension or revocation is pending against a CPNC owner.[9] Second, section 162-380 was re-ordained to establish the standards for the inspection of for-hire vehicles.[10]

The Plaintiffs in each of the three consolidated suits allege various constitutional violations. The *Melancon* Plaintiffs filed suit in this Court against the City. In the complaint, the *Melancon* Plaintiffs allege that several of the sections, separately and together, result in an unconstitutional taking in violation of the Fifth Amendment of the United States Constitution. (Rec. Doc. 1 at 5-21). The *Coleman* Plaintiffs filed suit in the Civil District Court for Orleans Parish against the City of New Orleans. The *Coleman* Plaintiffs allege unconstitutional takings,

---

[3] Orleans Parish, La., Code of Ordinances § 162-609.
[4] Orleans Parish, La., Code of Ordinances § 162-657.
[5] Orleans Parish, La., Code of Ordinances § 162-659.
[6] Orleans Parish, La., Code of Ordinances § 162-660.
[7] Orleans Parish, La., Code of Ordinances § 162-661.
[8] Orleans Parish, La., Code of Ordinances § 162-613.
[9] Orleans Parish, La., Code of Ordinances § 162-321.
[10] Orleans Parish, La., Code of Ordinances § 162-380.

but have also asserted violations of the 14th Amendment Equal Protection Clause, invasion of privacy, unreasonable financial burden, and excessive government regulations. (Civil Action No. 12-1909, Rec. Doc. 1-1). The *Richard* Plaintiffs also filed suit in the Civil District Court for Orleans Parish against the City of New Orleans. The *Richard* Plaintiffs have asserted claims for unconstitutional takings, breach of contract, and violations of the Contract Clause and Equal Protection Clause. (Civil Action No. 12-1964, Rec. Doc. 1-1).

The Plaintiffs sought injunctive relief and after a two-day hearing in open court, this Court issued an Order and Reasons in which it granted in part and denied in part Plaintiffs' Motion for Preliminary Injunction and granted in part and denied in part Defendant's Motion for Declaratory Relief. (Rec. Doc. 44). The Court granted Plaintiffs' motion for a preliminary injunction as it pertained to sections 162-59 and 162-321, which declare that CPNCs are privileges not property. The Court found that the Plaintiffs had demonstrated a substantial likelihood of success on the merits of their claims that those sections constituted an unconstitutional taking. As to the "upgrade ordinances"–sections 162-58, 162-380, 162-609, 162-657, 162-659, 162-660, 162-613–the Court denied Plaintiffs' motion for a preliminary injunction. The Court explained that "[w]hether or not Plaintiffs' costs in complying with the regulations are significant, Plaintiffs have not demonstrated that their injuries will be irreparable." (Rec. Doc. 44 at 22). The Court also found that Plaintiffs had not demonstrated a substantial likelihood of success on any of their claims regarding the upgrade ordinances. The Court explained that the new upgrade regulations "are rationally related to addressing the state's interest and duty in regulating the taxicab industry." (Rec. Doc. 44 at 28).

Both parties appealed and on December 21, 2012, the United States Court of Appeals for the Fifth Circuit issued a Judgment in which it vacated this Court's order insofar as it granted the Plaintiffs' motion for a preliminary injunction. *See Dennis Melancon, Inc. v. City of New*

3

*Orleans*, 703 F.3d 262 (5th Cir. 2012). The Fifth Circuit found that Plaintiffs had not demonstrated a substantial likelihood of prevailing on the merits of their claim that sections 162-59 and 162-321 effected a taking of property interests. In reaching this conclusion, the Fifth Circuit examined the "'existing rules or understandings' surrounding CPNCs" in order to "ascertain the nature of the interest held (if any) in the certificates." *Melancon*, 703 F.3d at 270. The Court concluded that "even in the absence of the April 2012 versions of sections 162-59 and 162-321, the City's authority to exercise control over CPNCs extends to such a degree that their holders possess, if anything, only a limited bundle of rights in connection therewith." *Id.* at 272. The Court explained that "we are of the view that sections 162-59 and 162-321 merely codify pre-existing law, which defined CPNCs as privileges subject to extensive regulation." *Id.* The Court determined that this Court had abused its discretion in concluding that Plaintiffs demonstrated a substantial likelihood of prevailing on their claims. *Id.*

The Fifth Circuit affirmed this Court's decision insofar as it denied the preliminary injunction with respect to the upgrade ordinances. *Id.* at 280. The Fifth Circuit agreed that Plaintiffs had failed to show that they would be irreparably injured by the denial of an injunction. *Id.* at 279. The Fifth Circuit explained that "should Plaintiffs ultimately prevail on the merits of their suit, they have recourse–in the form of subsequent civil suits against the City–to recover the amounts they erroneously will have expended to comply with the ordinances." *Id.* at 279. The Fifth Circuit declined to address this Court's ruling on the other requirements for a preliminary injunction. On May 21, 2013, the United States Supreme Court denied Plaintiffs' petition for a writ of certiorari. (Rec. Doc. 109).

## II. PRESENT MOTION

On July 5, 2012, the City filed a Motion to Dismiss in the *Melancon* case. (Rec. Doc. 7). In August 2012, the City filed two additional Motions to Dismiss, almost identical to the first,

4

which apply to the other two groups of Plaintiffs. (Rec. Docs. 17, 27). Only the *Melancon* Plaintiffs filed a response. The Court did not rule on these motions, as it was awaiting final resolution of the Motion for Preliminary Injunction and the Motion for Declaratory Relief. On November 20, 2013, the Court established a new schedule for these motions. Accordingly, the *Melancon* Plaintiffs and the City both filed supplemental memoranda in December 2013 and participated in oral argument on January 15, 2014.[11]

### A. Defendant's Motions to Dismiss (Rec. Docs. 7, 17, 27)[12]

The City filed the present Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). First, the City argues that the ordinances are presumed to be constitutional because they were enacted pursuant to the City's police power and are rationally related to a legitimate government purpose–the promotion of public health, safety and welfare. (Rec. Doc. 7-1 at 12). Second, the City argues that Plaintiffs have failed to state a claim of unconstitutional taking because they lack a protected property interest in their CPNCs. (Rec. Doc. 7-1 at 12). Third, the City argues that Plaintiffs have failed to state a claim of unconstitutional taking because the City's actions do not rise to the level of a regulatory taking under *Penn Central Transportation v. City of New York*. (Rec. Doc. 7-1 at 14) (citing 438 U.S. 104 (1978)).

On July 17, 2012, the *Melancon* Plaintiffs filed an opposition to the City's Motion to Dismiss. Plaintiffs' opposition focused exclusively on the takings claim and the question of whether a CPNC is property or a privilege. (Rec. Doc. 10).

---

[11] The Court held several status conferences in the months following the Supreme Court's denial of cert. (Rec. Docs. 115, 118, 123, 126). During these conferences, the Court was informed that the *Richard* and *Coleman* Plaintiffs would be unable to continue the litigation. On November 7, 2013, counsel for the *Richard* Plaintiffs withdrew.

[12] The City's three motions are very similar. The Court will focus on the motion that pertains to the *Melancon* Plaintiffs, as they are the only group that filed a response and supplemental memorandum. However, the Court's analysis of this motion is applicable to all three groups.

On December 13, 2013, the *Melancon* Plaintiffs filed a supplemental memorandum in opposition to the Motion to Dismiss. (Rec. Doc. 133). Plaintiffs argue that sections 162-321 and 162-613 are unconstitutional. Plaintiffs concede that "rational basis" review is the appropriate standard for evaluating these ordinances, however, Plaintiffs emphasize that "rational basis review, while deferential, is not toothless." (Rec. Doc. 133 at 3). According to Plaintiffs, many courts have invalidated statutes using rational basis review. Plaintiffs argue that no rational basis has been given for the amendment to section 162-321 and for the age restriction in section 162-613. Plaintiffs argue that the present case is distinguishable from *Dukes v. City of New Orleans*, in which the Supreme Court upheld an ordinance that prohibited certain vendors from selling food in the French Quarter. *See* 427 U.S. 297 (1976). Plaintiffs claim that in *Dukes*, the ordinance was found to advance public welfare, preserve history and enhance tourism and that these are legitimate government interests. (Rec. Doc. 133 at 5). Plaintiffs argue that the change to section 162-321, from "shall be transferred" to "may be transferred," advances no legitimate government interest and that the age limit in section 162-613 is arbitrary. (Rec. Doc. 133 at 8).

With respect to the upgrade ordinances, Plaintiffs argue that this Court ought to reach the merits of their claim as it relates to the issue of damages. (Rec. Doc. 133 at 9). Plaintiffs cite the Fifth Circuit's opinion in *Melancon* for the proposition that Plaintiffs are entitled to a determination on the merits of their damages. (Rec. Doc. 133 at 9).

On December 24, 2013, the City filed a supplemental memorandum in support of its Motion to Dismiss. (Rec. Doc. 134). First, the City argues that Plaintiffs' takings claims must be dismissed in light of the Fifth Circuit's opinion on the issue. The City claims that the "law-of-the-case" doctrine prevents this Court from reexamining the issue of whether CPNCs are property rights. (Rec. Doc. 134 at 3). Second, the City argues that the Plaintiffs' claims regarding the general unconstitutionality of certain provisions should be dismissed. The City

6

argues that by failing to state a specific constitutional provision or statute as the basis of their other constitutional claims, the Plaintiffs failed to give the Court or Defendants sufficient guidance as to the basis of those claims. (Rec. Doc. 134 at 3-4). Third, the City argues that Plaintiffs' equal protection claim should be dismissed because the regulations at issue are rationally related to the City's "interest and duty in regulating the taxicab industry." (Rec. Doc. 134 at 5) (citing Rec. Doc. 44). The City contends that Plaintiffs are asking the Court to sit as a superlegislature and evaluate the wisdom and logic of the new ordinances. (Rec. Doc. 134 at 6).

With respect to the age limit placed on taxicabs, the City argues that this requirement is rationally related to the government's interest, as older vehicles are less safe and less desirable. (Rec. Doc. 134 at 9). According to the City, the inquiry should end here. The City argues that this Court should not inquire as to whether there might be a better way to produce this same result. The City claims that "[i]t is not the City's burden to demonstrate that its chosen means is the only method of achieving its goal, or the best." (Rec. Doc. 134 at 9).

Finally, the City argues that it is entitled to costs in the amount of $13,006.65. (Rec. Doc. 134 at 11). The City claims that both this Court as well as the Fifth Circuit awarded judgments taxing costs against Plaintiffs. According to the City, it sent a demand letter to Plaintiffs but has not received a response.

### III. LAW AND ANALYSIS

#### A. Standard for Motion to Dismiss - Rule 12(b)(6)

The Federal Rules of Civil Procedure permit a defendant to seek a dismissal of a complaint based on the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A district court must construe facts in the light most favorable to the nonmoving party. The court must accept as true all factual allegations contained in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). Dismissal is appropriate only if the complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corporation et al. v. William Twombly,* 550 U.S. 544, 570 (2007).

### B. The Fifth Amendment to the United States Constitution - The Takings Clause

In their supplemental memorandum, Plaintiffs state that they are "setting aside the argument that CPNCs are vested property rights." (Rec. Doc. 133 at 6). Plaintiffs note in a footnote that they "intend to preserve these claims for a trial on the merits." (Rec. Doc. 133 at 6). However, because the Plaintiffs' complaint, the City's Motion to Dismiss, and Plaintiffs' initial response deal primarily with this issue, as it relates to Plaintiffs' claim that the ordinances constitute an unconstitutional taking of their property, the Court will address that argument here.

The Takings Clause of the Fifth Amendment, which is made applicable to the states through the Fourteenth Amendment, provides that "private property" shall not "be taken for public use, without just compensation." U.S.C. Const. amend. V; *see also Urban Developers LLC v. City of Jackson*, 468 F.3d 281, 292 (5th Cir. 2006) (citing *Chicago, B. & Q.R. Co. v. Chicago*, 166 U.S. 226 (1897)). "Thus, to prevail on a takings claim, a plaintiff first must demonstrate that he has a protectable property interest." *Melancon*, 703 F.3d at 269. In order to determine if a protectable property interest exists, the courts should "resort to 'existing rules or understandings that stem from an independent source such as state law ....'" *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1030 (1992) (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)).

In their complaint, Plaintiffs claim that sections 162-59 and 162-321 violate the Fifth

8

Amendment because those regulations take CPNCs without providing just compensation to Plaintiffs. After a two-day evidentiary hearing, this Court issued an Order and Reasons on the pending Motion for Preliminary Injunction. (Rec. Doc. 44). This Court determined, after detailing the history of the taxicab industry in New Orleans, that Plaintiffs had demonstrated a likelihood of success on the merits of their unconstitutional takings claim. The Court found that "the evidence support[ed] the conclusion that Plaintiffs have a protectable property interest in CPNCs ...." (Rec. Doc. 44 at 11). As explained above, the Fifth Circuit vacated this Court's Order and held that this Court "abused its discretion in concluding that Plaintiffs demonstrated a substantial likelihood of prevailing on their claim that sections 162-59 and 162-321 effected a regulatory taking." *Melancon*, 703 F.3d at 274. While a court's denial of a preliminary injunction is not determinative of the full merits of the claim, the Fifth Circuit provided extensive analysis which went much further than a mere determination that Plaintiffs had not established a likelihood of success on the merits. The Fifth Circuit stated:

> ... even in the absence of the April 2012 versions of sections 162–59 and 162–321, the City's authority to exercise control over CPNCs extends to such a degree that their holders possess, if anything, only a limited bundle of rights in connection therewith. For instance, the City has the statutory power, among other things, to impose various prerequisites on a CPNC applicant or transferee, and to suspend or revoke a CPNC. Orleans Parish, La., Code of Ordinances §§ 162–181, 162–248, 162–249. The City also is authorized to designate routes over which CPNC holders may operate their vehicles, and to require that CPNCs be renewed annually. Orleans Parish, La., Code of Ordinances §§ 162–52, 162–186. Perhaps most importantly, the City has the discretion to adjust the number of CPNCs it issues.
> As the *Hutton* court explained, these features all are hallmarks of a privilege rather than a property right. 47 So. 2d at 668–69. *Hutton* noted, for instance, that a CPNC "is in the nature of a personal privilege or license" because it "may be amended or revoked by the power authorized to issue it." *Id.* at 668. Similarly, the fact that the City may limit "[t]he number of such certificates to be granted over a particular route" evidences that CPNCs are "issued for the purpose of promoting the public convenience and

9

> necessity, and not for the purpose of conferring upon the holder any proprietary interest." *Id.*
>
> To be sure, as Plaintiffs argue, the City traditionally has permitted CPNC holders to transfer their certificates for consideration. By so doing, the City tacitly has contributed to the development of a secondary market wherein CPNCs historically have attained significant value. This does not, however, change our understanding of the fact that CPNC holders merely possess a "*license* to participate in the highly regulated taxicab market [that] is subject to regulatory change." Minneapolis Taxi Owners, 572 F.3d at 509 (emphasis added). Indeed, section 162–59 expressly states that CPNCs are privileges.
>
> ....
> We similarly conclude that whatever interest Plaintiffs hold in their CPNCs is the product of a regulatory scheme that also vests the City with broad discretion to alter or extinguish that interest ....
>
> Simply put, we are of the view that sections 162–59 and 162–321 merely codify pre-existing law, which defined CPNCs as privileges subject to extensive regulation. Although it is true that a secondary market has developed based on the transferability of CPNCs, as we have explained, any resulting interest Plaintiffs hold in their CPNCs has emerged from a regulatory framework that itself allows the City to limit or revoke that interest. Such an interest does not fall within the ambit of a constitutionally protected property right, for it amounts to no more than a unilateral expectation that the City's regulation would not disrupt the secondary market value of CPNCs.

*Melancon*, 703 F.3d at 272-274. While these statements are arguably not determinative of the present motion, they are certainly instructive. The Fifth Circuit reached these conclusions after analyzing "'the existing rules or understandings' that define the dimensions of the interest associated with a CPNC ...." *Melancon*, 703 F.3d at 272. The Fifth Circuit stated that its conclusion was "most emphatically supported by the heavily regulated environment within which the New Orleans taxicab industry has operated." *Id.* Consistent with the Fifth Circuit's statements on the topic, this Court finds that Plaintiffs do not possess a protectable property interest in their CPNCs. Taking all of Plaintiffs' factual allegations as true, Plaintiffs will be unable to state a viable claim under the Takings Clause. Accordingly, Plaintiffs' takings claims

are dismissed.

### C. Other Constitutional Claims - Rational Basis Review

In their supplemental memorandum, Plaintiffs state that "the analysis of whether the amendments violate the Equal Protection and Due Process clauses shall be subject to 'rational basis' review, requiring only that the regulation bear some rational relation to a legitimate state interest."  (Rec. Doc. 133 at 3) (citing *Romer v. Evans*, 517 U.S. 620, 632 (1996)).  The analysis required for each of these constitutional claims is very similar, however the Court will go through each separately.  *See Powers v. Harris*, 379 F.3d 1208, 1215 (10th Cir. 2004) (explaining that the Equal Protection and Due Process clauses protect distinctively different interests, but that "a substantive due process analysis proceeds along the same lines as an equal protection analysis ...").  Because the ordinances are rationally related to a legitimate government interest, the Court finds that they do not violate the Equal Protection Clause or the Due Process Clause.

*1. Equal Protection*

The Fourteenth Amendment states that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws."  U.S.C. Const. amend. XIV.  This clause has been used to invalidate laws that make impermissible classifications among people.  If a law is challenged based on equal protection grounds, the issue is whether the government can identify a sufficiently important objective for its classification.  *See Romer*, 517 U.S. at 631 ("even in the ordinary equal protection case calling for the most deferential of standards, we insist on knowing the relation between the classification adopted and the object to be attained").  Plaintiffs do not discuss the first element of this analysis–the classification.  However, Plaintiffs concede that the ordinances should be evaluated under rational basis review, as they do not involve distinctions based on "'suspect characteristics' (e.g. race or national origin)" or even "'quasi-suspect' classes

(e.g. gender or illegitimacy)."  (Rec. Doc. 133 at 3).  Accordingly, the Court will evaluate the ordinances at issue under rational basis review.

The United States Supreme Court has explained that under rational basis review, "if a law neither burdens a fundamental right nor targets a suspect class, [the court] will uphold the legislative classification so long as it bears a rational relation to some legitimate end." *Romer*, 517 U.S. at 631.  States are given a "wide scope of discretion in enacting laws which affect some groups of citizens differently than others." *McGowan v. State of Maryland*, 366 U.S. 420, 425 (1961).  Courts are not to "sit as a superlegislature to judge the wisdom or desireability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines ...." *Dukes*, 427 U.S. at 303.  Furthermore, there is a presumption that state legislatures have acted constitutionally.  *See McGowan*, 366 U.S. at 425 ("State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality.").  The legislature does not even have to articulate the purpose or rationale behind the regulation.  "Instead, a classification 'must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'"  *Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993) (quoting *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993)).  "[I]n the local economic sphere, it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment." *Dukes*, 427 U.S. at 303-04 (citing *Ferguson v. Skrupa*, 372 U.S. 726, 732 (1963)).  "'[T]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it.'"  *Heller*, 509 U.S. at 320 (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973)).

In *City of New Orleans v. Duke*, the United States Supreme Court applied rational basis review to a city ordinance that prohibited food vendors from selling food in the French Quarter

but included a "grandfather clause" that made an exception for vendors who had been selling food for over eight years. 427 U.S. 297, 299 (1976). The Supreme Court explained that "[w]hen local economic regulation is challenged solely as violating the Equal Protection Clause, this Court consistently defers to legislative determinations as to the desirability of particular statutory discriminations." *Id.* at 303. "States are accorded wide latitude in the regulation of their local economies under their police powers, and rational distinctions may be made with substantially less than mathematical exactitude." *Id.* The Supreme Court found that the ordinance at issue was rationally related to a government interest and reversed the Fifth Circuit. *Id.* at 304. The Supreme Court explained that the ordinance furthered the government's objective, which was "to preserve the appearance and custom valued by the Quarter's residents and attractive to tourists." *Id.* at 304-05. ("We cannot say that these judgments so lack rationality that they constitute a constitutionally impermissible denial of equal protection."). The Court explained that the city's "gradual approach" to the problem of pushcart vendors was constitutionally permissible. *Id.* at 305.

In the present case, Plaintiffs contend that sections 162-321 and 162-613 are arbitrary and do not satisfy rational basis review. (Rec. Doc. 133 at 6, 10). As explained above, section 162-321 governs the transfers of CPNCs. It provides:

> Upon the sale or transfer of any taxicab or for-hire vehicle, except for accessible taxicabs which cannot be transferred under any circumstances, consideration may be received by the vendor or transferor or other person or paid thereto by the vendee or transferee for the transfer of the permit governing such vehicle. The CPNC may be transferred provided that the following requirements are met ...

Orleans Parish, La., Code of Ordinances § 162-321. The ordinance goes on to list certain requirements such as applying to the taxicab bureau, obtaining approval, and undergoing an inspection. *Id.* This ordinance is rationally related to the state's interest and duty in regulating

the taxicab industry.[13]  As this Court explained in its previous Order and Reasons, the City has an "interest in its taxicab industry, ensuring the safety of its citizens and visitors, and promoting hospitality and tourism in New Orleans." (Rec. Doc. 44 at 29).  Regulating the transfer of CPNCs allows the city to keep track of the CPNCs and ensure that they are being transferred to appropriate recipients.  This is related to the City's interest and is, therefore, constitutional.

Similarly, section 162-613, which establishes a maximum age of taxicabs, satisfies the rational basis test.  This limitation is rationally related to the city's interest in regulating the taxicab industry and ensuring safety and hospitality.  Newer cars are generally in better condition and have newer safety features.  There may be other, and perhaps better, ways to ensure that taxicabs are in good condition.  However, it is not this Court's job to evaluate the wisdom of the ordinance.  *See Dukes*, 427 U.S. at 303 ("rational distinctions may be made with substantially less than mathematical exactitude.  Legislatures may implement their program step by step ... in such economic areas, adopting regulations that only partially ameliorate a perceived evil and deferring complete elimination of the evil to future regulations.) (citation omitted) (citing *Williamson v. Lee Optical Co.*, 348 U.S. 483, 488-489 (1955)).  The age limit is not wholly illogical or irrational.  It is related to the City's interest.  Therefore, Plaintiffs fail to state a claim for relief under the Equal Protection Clause.

### 2. *Due Process Clause*

A similar analysis is required to evaluate the ordinances under the Due Process Clause. The Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty,

---

[13] Plaintiffs contend that there must be a rational basis for the legislature's *amendment* of the ordinance.  Plaintiffs state that "not once does the City articulate how *changing* the language of § 162-321 promotes general health, welfare or safety." (Rec. Doc. 133 at 6) (emphasis added).  However, the question is not whether the legislature had a rational basis for changing the language in the ordinance.  The appropriate question is whether section 162-321, as written now, violates the Equal Protection Clause of the United States Constitution or whether it is

14

or property, without due process of law ...."  U.S.C. Const. amend. XIV.  Since 1937, courts have rarely found a state or federal economic regulation to be unconstitutional under the due process clause.  *See* Erwin Chemrinsky, Constitutional Law: Principles and Policies 625 (3d ed. 2006).  Economic regulations will be upheld under the Due Process Clause as long as they are rationally related to some government objective.  *See Williamson*, 348 U.S. at 491; *see also* Chemrinsky, *supra*, at 625 ("The Court has made it clear that economic regulations–laws regulating business and employment practices–will be upheld when challenged under the due process clause so long as they are rationally related to serve a legitimate government purpose.").

In *Williamson v. Lee Optical of Oklahoma*, the United States Supreme Court upheld a city ordinance that made it unlawful for any person who was not a licensed optometrist to fit lenses to a face or to replace frames in lenses.  348 U.S. at 485.  The Court stated that "[t]he Oklahoma law may exact a needless, wasteful requirement in many cases.  But it is for the legislature, not the courts, to balance the advantages and disadvantages of the new requirement."  *Id.* at 487.  The Court hypothesized about the legislature's possible motivation in enacting the regulation.  The Court explained that "the law need not be in every respect logically consistent with its aims to be constitutional.  It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it."  *Id.* at 487-88.  The Court explained that "[t]he day is gone when this Court uses the Due Process Clause of the Fourteenth Amendment to strike down state laws, regulatory of businesses and industrial conditions, because they may be unwise, improvident, or out of harmony with a particular school of thought."  *Id.* at 488.

Plaintiffs rely heavily on *St. Joseph Abbey v. Castille*.  712 F.3d 215 (5th Cir. 2013).  In that case, the Fifth Circuit applied rational basis review and held that a rule issued by the

---

rationally related to a legitimate government interest.

15

Louisiana Board of Funeral Directors, which essentially granted funeral homes an exclusive right to sell caskets, was unconstitutional. *Id.* at 217-18. In *St. Joseph Abbey*, the district court entered an order enjoining the enforcement of the rule. 835 F. Supp. 2d 149 (E.D. La. 2011). The district court provided a lengthy analysis of the possible justifications for the rule–consumer protection, public health, safety, etc.–and found that none were legitimate. *Id.* at 157-59. After a full trial on the merits, the Court concluded that there was no rational basis for the rule and that it violated both the Due Process Clause and the Equal Protection Clause. *Id.* at 151 ("It appears that the sole reason for these laws is the economic protection of the funeral industry which reason the Court has previously found not be a valid government interest standing alone to provide a constitutionally valid reason for these provisions.").

The Fifth Circuit affirmed the decision of the district court. 712 F.3d at 217. The Fifth Circuit, not distinguishing between the due process and the equal protection analysis, held that "mere economic protection of a particular industry" is not a legitimate government purpose. *Id.* at 222. The Court admitted that "economic protection, that is favoritism, may well be supported by post hoc perceived rationale as in *Williamson*," but found that no such rationale existed for this rule. *Id.* at 222-23. The Court explained that "although rational basis review places no affirmative evidentiary burden on the government, plaintiffs may nonetheless negate a seemingly plausible basis for the law by adducing evidence of irrationality." *Id.* at 222. The Court concluded that "no rational relationship exists between public health and safety and restricting intrastate casket sales to funeral directors. Rather, this purported rationale for the challenged law elides the realities of Louisiana's regulation of caskets and burials." *Id.* at 226. Importantly, the Court pointed out that "Louisiana does not regulate the use of a casket, container, or other enclosure for the burial remains; has no requirements for the construction or design of caskets; and does not require that caskets be sealed ... Indeed, no Louisiana law even requires a person to

16

be buried in a casket." *Id.* at 218.

The present case is distinguishable from *St. Joseph Abbey*. First, the City *does* regulate the taxicab industry. As discussed above, the ordinances which establish policies for transferring CPNCs and age limitations on taxicabs are rationally related to the City's interest in regulating this industry. There is no allegation in this case, like in *St. Joseph Abbey*, that the purpose of the ordinances is economic protection or favoritism toward a particular industry. Further, unlike in *St. Joseph Abbey*, where the plaintiffs negated all plausible basis for the rule, Plaintiffs in the present case have failed to do the same. Plaintiffs claim simply that there are other, better, ways to accomplish the City's objective. *See* (Rec. Doc. 133 at 10) ("mileage is a better and more accurate indicator of age than model year ..."). However, Plaintiffs do not demonstrate that the ordinances are completely irrational. The ordinances at issue are rationally related to a legitimate government interest. Therefore, Plaintiffs fail to state a claim for relief under the Due Process Clause.

### D. Damages Associated with the Upgrade Ordinance

Plaintiffs cite the Fifth Circuit's statement in the present case about the possibility of recovering damages at a later point if Plaintiffs succeed on the merits. (Rec. Doc. 133 at 9) (quoting *Melancon*, 703 F.3d at 279 ("Here, the costs of complying with the Upgrade Ordinances, though disputed at this juncture, can be ascertained with precision at a later hearing. In other words, should Plaintiffs ultimately prevail on the merits of their suit, they have recourse–in the form of subsequent civil suits against the City–to recover the amounts they erroneously will have expended to comply with the ordinances.")). Plaintiffs, relying on this statement, argue that they should be allowed to proceed to a trial on the merits regarding the issue of damages. This argument is misplaced.

In *Melancon*, the Fifth Circuit was reviewing this Court's decision regarding a

preliminary injunction. In order to be entitled to a preliminary injunction, Plaintiffs needed to establish irreparable injury. *See Black Fire Fighters Ass'n v. Dallas*, 905 F.2d 63, 65 (5th Cir. 1990) ("Generally, a movant must satisfy each of four traditional criteria in order to be entitled to a preliminary injunction: (1) irreparable injury; (2) substantial likelihood of success on the merits[;] (3) a favorable balance of hardships[;] and (4) no adverse effect on the public interest."). The Fifth Circuit explained that whatever injury Plaintiffs may have suffered in this case was not irreparable. *See Melancon*, 703 F.3d at 279 ("Thus, because Plaintiffs' only alleged harm can be obviated by monetary relief, it does not constitute the 'irreparable' injury necessary to obtain the extraordinary relief of a preliminary injunction."). The Fifth Circuit did not say, as Plaintiffs contend, that Plaintiffs are entitled to a trial on the merits on the issue of damages. Instead, the Fifth Circuit said that *if* the Plaintiffs made it to a trial on the merits and prevailed, they would be able to be compensated for any injuries they experienced. This statement does not change this Court's opinion that Plaintiffs have failed to state a claim for relief and, therefore, will not make it to a trial on the merits.

## IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendant's Motions to Dismiss (Rec. Docs. 7, 17, 27) are hereby **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs are to pay Defendants for costs in the amount of $13,006.65. (Rec. Docs. 85, 108).

New Orleans, Louisiana, this 19th day of March, 2014.

_____
UNITED STATES DISTRICT JUDGE